CITY OF PARAGOULD ET AL *v.* J. R. COOPER
ET AL

5-6239                                        492 S.W. 2d 243

Opinion delivered April 2, 1973

*C. B. Erwin,* City Attorney, and *Branch, Adair & Thompson,* for appellants.

*Elbert Johnson and Kirsch, Cathey, Brown & Goodwin,* for appellees.

GEORGE ROSE SMITH, Justice. This is a zoning dispute. The appellees, J.R. and Ruth Cooper and Titan Development Company, own contiguous tracts in Para-

gould, comprising about seven and a half acres. The property lies in the southwest quadrant of the intersection between Highway 1, running north and south, and Highway 25, running east and west. When the city's zoning ordinance became effective in 1971 most of the appellees' frontage along the two highways was zoned C-3, commercial, to depths up to 300 feet. The remaining 175 feet of frontage and the rear part of the property were zoned R-1, residential.

In January, 1972, the property owners sought to have the entire tract rezoned for commercial use, so that a large shopping center could be constructed upon the land. The City Planning Commission recommended the change by a 4-3 vote, but the City Council rejected the proposal by a 5-1 vote. The landowners then brought this suit to have the city's refusal to rezone the property declared to be arbitrary and capricious. This appeal is from a decree sustaining the landowners' position and granting the relief sought.

After studying the protracted record made in the case we are unanimously of the opinion that the trial court's decree is against the weight of the evidence. We are unwilling to say that the City Council acted arbitrarily or capriciously in refusing to rezone the appellees' property. To the contrary, in our judgment the city has acted consistently, fairly, and reasonably in taking the view that the area lying south of Highway 25 is essentially residential in character and should be protected from the proposed extensive commercial incursion.

Highway 25 appears to be a reasonable dividing line between the commercial areas to the north and the residential areas to the south. The northwest and northeast quadrants of the intersection in question are devoted to commercial use. The southeast quadrant is occupied by a large cemetery that will certainly not be put to commercial use. In the southwest quadrant there are a filling station on the corner (not owned by the appellees) and a small commercial building formerly used as a pizza parlor. Both those commercial uses had existed for ten years or longer before the zoning law

went into effect. The city, in drafting the original zoning law, might defensibly have classified those two lots as nonconforming uses or have incorporated them in the comparatively small commercial zone that was in fact created. That choice was a legislative decision lying within the Council's province.

For the most part the appellees' seven and a half acres are vacant property formerly used for agriculture. The tract adjoins, to the south and west, what is shown without dispute to be the finest residential district in the city, occupied by scores of homeowners who are protesting the proposed rezoning. We cannot say that the city acted with no reasonable basis in deciding not to permit that area to be invaded by an extensive commercial development such as a shopping center or whatever else the appellees might eventually decide to put upon the property. It is shown that in other instances the city has consistently refused to permit commercial rezoning south of Highway 25.

At the trial the appellees introduced several real estate experts who testified either that the R-1 part of the tracts could not be developed residentially or that it would be very costly to so develop it. That view, however, was refuted by two witnesses for the protesting homeowners. Pat Watson, a real estate broker actively engaged in developing and building residential and commercial properties, submitted an actual plan showing how the tract could be developed. Richard Spelic, the director of planning for 12 counties in the area, submitted two plans, one involving development of the property as R-1 residential and the other involving its development if the rezoning were limited to R-2 residential, permitting such uses as quiet professional offices. After the defendants and intervenors rested their case the plaintiffs did not call any witness to attack any of the three plans proposed by Watson and Spelic. We are more favorably impressed by the positive testimony of the appellants' witnesses than by the opinions expressed by the appellees' witnesses, which are essentially to the effect that the development of residential property is ordinarily not as profitable as the development of commercial property. In this connection we should add

that Titan Development Company, the principal appellee, did not own the tract when the zoning ordinance became effective in March, 1971. It was after that time that Titan acquired part of the tract in fee and contracted to acquire the rest of it from the Coopers. Consequently Titan deliberately took the risk involved in purchasing property not zoned to its liking.

The appellants, citing an article by Professor Gitelman, Judicial Review of Zoning in Arkansas, 23 Ark. L. Rev. 22 (1969), invite us to re-examine the rule first announced in *Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S.W. 883 (1925), to the effect that a city acts arbitrarily in refusing to rezone property that stands in the path of an expanding business district. The appellees in turn rely upon the *Pfeifer* rule in urging that the decree be affirmed. We do not regard this as an appropriate case for a re-examination of *Pfeifer*, because the area south of Highway 25 was certainly not an expanding commercial district when the appellees sought rezoning. In fact, no new commercial structures had been built in that area for more than a decade before the passage of the zoning ordinance.

The appellees also complain that the zoning map adopted along with the ordinance does not show with complete precision the boundaries of the R-1 and C-3 areas in their property. That defect, however, certainly does not invalidate the ordinance insofar as it affects the appellees' property. If any clarification is needed petitioners must first exhaust their administrative remedies before seeking judicial relief.

Reversed.